IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JAMES W. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | CV-09-1364-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

MOSMAN, District Judge:

## **INTRODUCTION**

Plaintiff James Russell brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g), and 1383(c). I AFFIRM the Commissioner's decision.

## BACKGROUND

Russell was fifty-two years old at the time of administrative hearing and has a tenth grade education. Admin. R. 12. He served in the U.S. Navy. Russell worked as a logger, automobile mechanic, and service station attendant. *Id.* at 8, 150. He alleges onset of disability from December 16, 2005 due to Meniere's disease, low back pain, leg pain, arthritis in the shoulder, hypertension and obesity. Russell filed for disability on January 18, 2006 and his application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on June 3, 2008. The ALJ determined Russell satisfied the insured status requirements for a claim under Title II through December 31, 2010. *Id.* at 36. Russell must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on June 24, 2008, finding Russell was not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ followed this sequential analysis and found at step one that Russell had not engaged in substantial gainful activity (SGA)

since the alleged onset date of December 16, 2005.  Admin. R. 36.  At step two the ALJ determined

Russell had the severe combination of impairments of Meniere's disease status post left ear surgery,

status post lumbar laminectomies in 1987 and 1991, lumbar spondylosis, left shoulder pain, and

obesity.  *Id.*

The ALJ found at step three that Russell did not have an impairment or combination of

impairments that were so severe as to meet or medically equal one of the listed impairments in 20

C.F.R. pt. 404, subpt. P., App. 1.  *Id.*  The ALJ determined Russell's residual functional capacity

(RFC) was to perform light work "with occasional crouching, crawling, and climbing stairs.  He

should not climb ladders and he should avoid overhead reaching and exposure to hazards such as

unprotected heights and moving machinery."  *Id.*  at  37.  At step four, the ALJ found Russell could

not perform his past relevant work.  *Id.*  at 39.  After eliciting the testimony of a vocational expert

(VE), the ALJ determined Russell could perform other work that exists in significant numbers in the

national economy and was not disabled within the meaning of the Social Security Act.  *Id.*  at 41.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  *Batson*

*v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Morgan*

*v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ is responsible for

resolving conflicts in the medical evidence and determining credibility.  *Edlund v. Massanari,* 253

F.3d 1152, 1156 (9th Cir. 2001).  If the evidence can reasonably support either affirming or reversing

the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

Russell alleges the ALJ erred in his RFC determination. He asserts the ALJ erred in assessing his credibility. Russell also argues the ALJ erred in rejecting the walking and standing limitations of an examining physician. He argues further that the ALJ improperly assessed his obesity. Russell also asserts the ALJ erred at step five by failing to include all of his limitations in the hypothetical questions to the VE. Russell contends the Appeals Council erred by not properly considering evidence from the Veterans Administration.

I.    **RFC**

    A.    *Credibility Determination*

Russell asserts the ALJ failed to give clear and convincing reasons for rejecting his testimony regarding the severity of his impairments. The ALJ must assess the credibility of the claimant regarding the severity of symptoms when the claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Smolen*, 80 F.3d 1273, 1281–82 (9th Cir. 1996) (citations omitted). Russell has medically determinable impairments which could produce some of his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In assessing credibility, the ALJ may consider objective medical evidence, such as the claimant's treatment history, including the failure to seek or follow a prescribed course of treatment, and ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ noted that Russell believed he became disabled when he could no longer perform the heavy labor of a logger. Admin. R. 37. He agreed that Russell could no longer work as a logger, but found he was able to do other work. *Id.* at 38. The ALJ noted that Russell returned to logging after surgeries for his back injuries and ear problems. *Id.* He cited the medical record noting Russell had only minimal medical treatment during the period of alleged disability. *Id.*

The medical records note that in 2003 Russell experienced dizziness and vertigo, associated with Meniere's disease, which improved with decreased sodium intake. *Id.* at 359–60. Russell's ENG testing was relatively normal and showed a decreased function of sixteen percent in the left ear. *Id.* at 358. However, Russell elected to proceed with ear surgery recommended by a physician at Oregon Health Sciences University to treat Meniere's disease. *Id.* at 357. Russell's Meniere's disease was stable after the surgery. *Id.* at 350–51. Some vertigo was noted when Russell would look down, often while fishing or at work, and he also had postural hypertension. *Id.* at 197–98.

The records cited indicate that on Russell's examination on December 20, 2005 he had no complaints and needed follow up on his hypertension. *Id.* at 196–97. X-rays indicated moderate degenerative changes in the lumbosacral region of the spine. *Id.* at 221. A CT scan of the head was normal. *Id.* at 220. An examination by Dr. Alkadi in April 2007 noted resolution of headaches when taking hypertension medication. *Id.* at 244–46. Dr. Alkadi noted that Russell had no complaints other than a hernia, that his hearing was normal, and that he had a history of back pain treated with over-the-counter medication only. *Id.*

The ALJ also cited Russell's treatment records from the Veteran's Administration (VA) when he was seeking an increase for nonservice pension. *Id.* at 38–39. Nurse Practitioner (NP) Maher noted in March 2007 that Russell was to be evaluated for Meniere's disease and vertigo. *Id.* at 233–34. He further noted Russell had orthostatic dizziness when rising from a chair and had not been taking his hypertension medication. NP Maher noted Russell's hypertension was poorly controlled but he was not taking his medications. He also noted Russell stated he could not work due to low back pain, joint pain, and Meniere's disease but had no other conditions that significantly impair his ability to work. NP Maher noted Russell was also to be evaluated by orthopedics.

Dr. Schoenberg examined Russell in March 2007 and noted Russell was exposed to blasts in the military and claimed some hearing loss when he left the military. *Id.* at 231. Dr. Schoenberg noted Russell's vertigo started five years previously and Russell was told he had Meniere's disease. Dr. Schoenberg found that the diagnosis of Meniere's disease was uncertain and that it was difficult to make a connection to military service. Physician Assistant (PA) Welsh noted that although Russell had Meniere's disease with some vertigo problems he was otherwise stable on his feet. *Id.* at 234. He cited Russell's complaints of chronic back pain and although there were no neurological findings noted, "I expect he would not tolerate physical laborious (sic) jobs as this is chronic back problem but sedentary employment should not be precluded." *Id.* at 235.

Russell asserts NP Maher found his hypertension was not well controlled. However, NP Maher noted Russell was not taking his medication at that time and it did not directly cause an inability to work. *Id.* at 233–34. The ALJ found Russell's hypertension was well controlled when on medication and did not pose a barrier to employment. *Id.* at 39. The ALJ noted that even considering Russell's financial constraints, the medical record still indicated very minimal treatment.

*Id.* at 38. Medical evidence is a relevant factor to consider in determining the severity of pain complaints. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations in determining credibility. *Thomas,* 278 F.3d at 958–59. The ALJ noted Russell's testimony that he could perform light exertional activity such as housework, driving, performing independent self care, watching television, reading, taking care of the family finances, and lifting thirty pounds. Admin. R. 37–39. The ALJ also noted that Russell's wife said in her 2006 statement that Russell is able to go camping and fishing three times a year, do household repairs, and shop regularly. *Id.* at 39, 133–35. The ability to perform daily household chores may indicate an ability to work. *Rollins v. Massanari*, 261 F.3d at 857. However, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do have a bearing on credibility. *Id.* The ALJ also noted Russell worked as a logger for many years following his back surgeries. Admin. R. 37–38. The ALJ agreed that Russell could not perform this heavy work, but found that he was able to do light modified work. A claimant's work history may be considered as a factor in evaluating credibility. *Thomas v. Barnhart,* 278 F.3d at 959.

The ALJ may also employ ordinary techniques of credibility evaluation, such as the "claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid." *Smolen,* 80 F.3d at 1284; Soc. Sec. R. (SSR) 96-7p. The ALJ correctly noted that Russell testified his cane was prescribed by a

physician, but that the treatment records do not show a prescription for a cane.  Admin. R.  39.  In 2003, Dr. Lloyd recommended a walking stick while working in the woods.  *Id.*  at 349.  Dr. Nathan Margaret, an examiner, noted in 2006 that Russell walked without difficulty, had a normal gait, and did not use any assistive devices.  *Id.*  at  203.

The ALJ considered appropriate factors and drew reasonable inferences from substantial evidence in the record in assessing Russell's credibility.  The ALJ noted the severity of Russell's alleged symptoms were not corroborated by medical evidence; his hypertension was controlled when he took his medications; he engaged in many activities of daily living; and his testimony regarding his cane was less than candid.  The ALJ provided clear and convincing reasons for finding Russell's testimony regarding the severity of his limitations not credible.

### B.  *Medical Evidence*

Russell asserts the ALJ improperly disregarded the findings of Dr.  Margaret regarding his standing and walking limitations.  Dr.  Margaret, a state agency consultant, noted that he did not review any of the medical records.  *Id.*  at 202.  He further noted Russell complained of constant lower back pain and radiation down the leg.  Dr.  Margaret did note Russell walked without difficulty; had no trouble getting on or off the exam table; had normal and tandem gait; and could walk on tiptoes, heels, and stand on one leg.  *Id.*  at 202–03.  He also noted Russell was neurologically fine with some diminished range of motion in the back.  *Id.*  at 203.  Dr.  Margaret found Russell could lift twenty pounds occasionally and ten pounds frequently with only occasional bending, stooping, crouching, or crawling.  Dr.  Margaret also found Russell could sit six hours and walk and stand four hours in an eight hour day.  *Id.*  at 205.

Drs. Berner and Jensen, state agency nonexamining physicians, only gave partial weight to Dr. Margaret's limitations regarding standing and walking. *Id.* at 214–15. The ALJ noted that Drs. Berner and Jensen found discrepancies in Dr. Margaret's findings. *Id.* at 39. Drs. Berner and Jensen noted Dr. Margaret's standing and walking limitations were inconsistent with Russell's daily activities, his normal neurological exam, the fairly good range of motion in his back, and the fact that he took no prescribed pain medications. *Id.* 214–15. The ALJ also noted that although Dr. Margaret limited Russell to occasionally lifting twenty pounds, Russell testified he could lift thirty pounds, and Russell's wife testified he could lift thirty-five pounds. *Id.* at 39. The ALJ also cited the medical record, noting that no physician opined Russell was that limited, including the VA physicians who were considering disability. *Id.*

Drs. Berner and Jensen also added more limitations, such as no climbing ladders, and no working at unprotected heights. The ALJ noted Drs. Berner and Jensen agreed with Dr. Margaret regarding a light level of strength. *Id.* The ALJ noted he incorporated Dr. Margaret's non-exertional limitations into the RFC. The ALJ also included the additional limitations of Drs. Berner and Jensen in his RFC. The ALJ gave significant weight to the opinions of the nonexamining state agency consultants. The Commissioner must consider the opinions of the medical and psychological consultants who make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p. The opinions of nonexamining experts may constitute substantial evidence when consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir.1989). The opinions of Drs. Berner and Jensen were consistent with the other evidence in the record.

Russell argues that Dr. Margaret's opinion, which he asserts limits him to sedentary work, is supported by PA Welsh's assessment. PA Welsh stated, "I expect that he would not tolerate physical laborious (sic) jobs as this [is] a chronic back problem but sedentary employment should not be precluded." Admin. R. at 235. The ALJ noted his agreement that Russell could not perform heavy or medium work, but noted PA Welsh's statement does not clearly limit Russell to sedentary work and does not indicate what a "physical laborious job" means. *Id.* at 38. PA Welsh did not discuss "light" work or any functional work limitations. It is the ALJ's duty to determine an exertional work range as it goes beyond a medical judgment. SSR 96-5p. There is also no evidence that PA Welsh was referring to sedentary work as defined by social security regulations. *Orteza,* 50 F. 3d at 750 (when physician limited claimant to "sedentary type" work, it did not prevent ALJ from finding claimant could do light work as there was no evidence physician was aware of or referring to social security regulations).

Russell further argues that NP Maher supports his limitation to sedentary work. However, as correctly noted by the ALJ, NP Maher merely states the reasons Russell gives for not being able to work and defers a disability opinion to specialists. Admin. R. 38. Russell also cites standing limitations made by Dr. Collada, his back surgeon, in 1992. These limitations were following back surgery and Russell performed heavy work as a logger for years after this comment.

The ALJ found the medical record and the record as a whole supported the findings of the state agency consultants that Russell can perform a light level of work with postural limitations. It was proper for the ALJ to give significant weight to the opinions of the state agency consultants regarding Russell's ability to do light work, including standing and walking for six hours, as it was based on substantial evidence in the record. The court must uphold the ALJ's findings when based

on substantial evidence and free of legal error, even if evidence exists to support more than one rational interpretation of the evidence. *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039–40.

    **C.**    ***Obesity***

    Russell alleges that the ALJ erred in not properly considering his obesity. The ALJ found obesity to be among Russell's combination of impairments that were severe at step two of the disability analysis. He discussed Russell's obesity and noted it could, to some extent, increase Russell's back pain. Admin. R. 38. However, he noted Russell was still able to do modified light work as provided in his RFC. Russell has not posited any further functional limitations caused by his obesity. Russell also does not point to any medical record that indicates his obesity causes any further limitations. The ALJ properly considered Russell's obesity and found it with his other impairments was severe, and accommodated the limitations of these combined impairments in Russell's RFC.

    The ALJ's determination of Russell's RFC is supported by substantial evidence in the record and free of legal error. The ALJ's RFC decision is therefore upheld. *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039–40.

**II.**    <u>**Step Five**</u>

    Russell asserts the ALJ erred at step five by not including all of his limitations in hypothetical questions to the VE. At step five, the Commissioner must show that significant numbers of jobs exist that the claimant can perform. *Andrews*, 53 F.3d at 1043. An ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id.*; *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2001). The ALJ did not find the limitations alleged by Russell credible. An ALJ is not required to

incorporate limitations based on evidence that he properly discounted. *Osenbrock,* 240 F.3d at 1164–65. The ALJ considered all the evidence and framed his vocational hypothetical questions based on the limitations supported by the record as a whole. The VE testified that Russell could perform a significant number of jobs that exist in the national economy. Admin. R. 24.

## III. Appeals Council Decision

Russell alleges the Appeals Council failed to properly consider new information regarding his Veteran's Administration (VA) disability status. An ALJ "must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002). The ALJ may give less weight to the VA rating when providing specific, valid reasons for doing so based on the record. *Id.* The VA decision was based on a claim submitted to them by Russell on July 14, 2008, after the decision of the ALJ. Russell became entitled to VA disability pension benefits effective on July 14, 2008. The VA found that Russell did not meet the "schedular requirements of a single disability ratable at 60% or more, or two or more disabilities combining to 70% with at least one ratable at 40%." Admin. R. 189. However, with the consideration of other factors, a nonservice pension was granted. *Id.*

The Appeals Council reviewed the VA decision and records and found it did not provide a basis for changing the ALJ's decision. *Id.* at 2. The Appeals Council noted that the ALJ reviewed and considered the records from the VA medical facility through April 2007. The Appeals Council also noted Russell was not found to be one hundred percent disabled under the VA criteria, and the VA decision did not address whether Russell was disabled during the disability period considered by the ALJ. The Appeals Council further noted it reviewed the later medical records from the VA

from July 2008 through December 2008.  The Commissioner has considered the VA rating of disability and provided specific, valid reasons for not giving it great weight.


## CONCLUSION

Based on the foregoing, the Commissioner's decision that Russell was not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence.


## ORDER

The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this ___5th___ day of January, 2011.


/s/ Michael W. Mosman____
Michael W. Mosman
United States District Judge

13 - OPINION AND ORDER